# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

HARVEY LEFTON, M.D.

**(b)** County of Residence of First Listed Plaintiff MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brian C. Farrell, Esq. Sidney L. Gold & Assoc., P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

**DEFENDANTS**

Regional Gastroenterology Associates of Lancaster, Ltd. and GI MSO, INC. jointly d/b/a U.S. Digestive Health

County of Residence of First Listed Defendant LANCASTER
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADA, 42 U.S.C. §12101, et seq.; ADEA, 29 U.S.C. § 621, et seq.

Brief description of cause:
Employment Discrimination Matter

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 150,000 IN EXCESS

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 08/31/2023 | /s/BRIAN C. FARRELL, ESQUIRE I.D. No.: #319145 Attorney For Plaintiff |

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Huntingdon Valley, PA 19106

Address of Defendant: 2112 Harrisburg Pike, Suite 202, Lancaster, PA 17604

Place of Accident, Incident or Transaction: 2112 Harrisburg Pike, Suite 202, Lancaster, PA 17604

***RELATED CASE, IF ANY:***

Case Number: ______________ Judge: ______________ Date Terminated: ______________

Civil cases are deemed related when ***Yes*** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ **is** / ☒ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/31/2023 /s/Brian C. Farrell, Esquire 319145

*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases *(Please specify):* ______________

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* ______________
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases *(Please specify):* ______________

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, BRIAN C. FARRELL, ESQ., counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 08/31/2023 /s/Brian C. Farrell, Esquire 319145

*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| HARVEY LEFTON, M.D. | : | CIVIL ACTION |
| v. | : | |
| Regional Gastroenterology Assoc. of Lancaster, Ltd. & GI MSO, Inc., jointly d/b/a U.S. Digestive Health | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (☑)

| | | |
|---|---|---|
| 08/31/2023 | /s/ Brian C. Farrell, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | bfarrell@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a) The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b) In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c) The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d) Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e) Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARVEY LEFTON, M.D.<br><br>Plaintiff,<br><br>-against-<br><br>REGIONAL GASTROENTEROLOGY ASSOCIATES OF LANCASTER, LTD.<br><br>and<br><br>GI MSO, INC.<br><br>jointly d/b/a U.S. DIGESTIVE HEALTH<br><br>Defendants. | Civ. No.: |

**COMPLAINT**

## I. PRELIMINARY STATEMENT

Plaintiff Harvey Lefton, M.D. ("Plaintiff" or "Dr. Lefton"), through his undersigned counsel, files this Civil Action Complaint against his former joint employer, Defendant Regional Gastroenterology Associates of Lancaster, Ltd., and its parent, Defendant GI MSO, Inc., who jointly do business as "U.S. Digestive Health" ("Defendants" or "USDH").

Dr. Lefton asserts discrimination and retaliation claims against Defendants under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, ("ADA"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*("ADEA"); and the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq*. ("PHRA"). Dr. Lefton also asserts claims against Defendants under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §206.1, *et seq.* ("WPCL"), and Pennsylvania common law for Defendants' violations of their contractual and statutory obligations

to Dr. Lefton in connection with his employment contract.

Dr. Lefton seeks all available damages, including economic loss, compensatory, liquidated, consequential, and punitive damages, along with all other relief under applicable federal and state law as this Court deems appropriate.

## II. PARTIES

1. Dr. Lefton is an adult individual and citizen of Pennsylvania, residing in Huntingdon Valley 19006.

2. Dr. Lefton was born in 1944 and was age 78 at the time USDH terminated his employment.

3. Dr. Lefton is a medical doctor.

4. At all times material to this action, Dr. Lefton was a qualified individual with a disability within the meaning of the laws at issue, in that he suffered from a physical impairment which substantially limited one or more major life activity, had a record of such impairment, or was regarded or perceived by USDH as having such impairment.

5. Defendant Regional Gastroenterology Associates of Lancaster, Ltd., is a Pennsylvania limited liability corporation with a principal place of business located at 2112 Harrisburg Pike, Suite 202, Lancaster, Pennsylvania 17604.

6. Defendant GI MSO, Inc., is a Delaware corporation with a principal place of business located at 707 Eagleview Blvd, Suite 100, Exton, Pennsylvania 19341.

7. Defendant GI MSO, Inc., is the parent company of Defendant Regional Gastroenterology Associates of Lancaster, Ltd., its wholly-owned and controlled subsidiary corporation.

8. Defendant GI MSO, Inc., conducts business through its wholly-owned and controlled subsidiary corporation, Defendant Regional Gastroenterology Associates of Lancaster, Ltd.

9. Defendant GI MSO, Inc., by and through its wholly-owned and controlled subsidiary corporation Defendant Regional Gastroenterology Associates of Lancaster, Ltd., maintains systematic and continuous activity such that it is at home in Pennsylvania; and has employed scores of people in Pennsylvania, including Dr. Lefton.

10. Upon information and belief, Defendant GI MSO, Inc., shares with Defendant Regional Gastroenterology Associates of Lancaster, Ltd., without limitation, common ownership, management, administrative services, personnel, policies, and employment practices.

11. Defendants are interconnected such that they are considered a “single” and/or “joint” employer or enterprise.

12. Defendants collectively retained control over the terms of Dr. Lefton’s employment.

13. Defendants operate collectively and do business under the banner of “U.S. Digestive Health.” Dr. Lefton refers to Defendants collectively as “USDH” from this point forward in the Complaint.

14. At all times material hereto, USDH collectively employed more than 20 employees.

15. At all times material to this action, USDH was an employer within the meanings of the state and federal laws which form the basis of this action.

16. At all times material to this action, Dr. Lefton was an employee of USDH within the meanings of the state and federal laws which form the basis of this action.

17. At all times material to this action, USDH acted by and through its authorized agents, servants, contractors or employees acting within the course and scope of their employment with USDH and in furtherance of USDH's business.

## III. JURISDICTION AND VENUE

18. The causes of action set forth in this Complaint arise under the ADA, 42 U.S.C. §12101, *et seq.* (Counts I-II); the ADEA, 29 U.S.C. § 621, *et seq.* (Counts III-IV); the PHRA, 43 P.S. §951, *et seq.* (Counts V-VI); Pennsylvania common law (Count VII); and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §206.1, *et seq.* (Count VIII).

19. The District Court has subject matter jurisdiction over Counts I-IV pursuant to 28 U.S.C. §1331.

20. The District Court has supplemental jurisdiction over Counts V-VIII pursuant to 28 U.S.C. §1367.

21. USDH is subject to the personal jurisdiction of this Court because, without limitation, the case arises out of or relates to the contacts of USDH with Pennsylvania, the contacts of USDH are continuous and systematic such that USDH is at home in Pennsylvania, or USDH has consented to personal jurisdiction by personal service within USDH via an authorized agent of the company.

22. Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

23. Moreover, the parties previously consented to the jurisdiction of this Court, specifically in Section 12.3 of their Physician-Partner Employment Agreement, which states:

> 12.3 Governing Law; Jurisdiction and Venue. This Agreement shall be interpreted, construed and governed according to the laws of the Commonwealth of Pennsylvania, without reference to its choice of law rules. Any suit involving any dispute or matter arising under this Agreement shall be brought in a state or federal

> court located in the Commonwealth of Pennsylvania having jurisdiction over the subject matter of the dispute or matter. The Parties hereby irrevocably consent to the exercise of personal jurisdiction and venue by any such court with respect to any such proceeding.

A true and correct copy of the Physician-Partner Employment Agreement is attached hereto as **Exhibit A**.

24. On or about January 12, 2023, Dr. Lefton dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission complaining of the acts of discrimination and retaliation alleged herein.

25. On or about June 11, 2023, the EEOC issued to Dr. Lefton a Dismissal and Notice of Right to Sue.

26. Dr. Lefton has filed this action within 90 days of receiving the Dismissal and Notice of Right to Sue from the EEOC.

## IV. <u>FACTUAL ALLEGATIONS SUPPORTING CLAIMS</u>

### A. <u>Dr. Lefton's Employment with USDH</u>

27. Dr. Lefton is an accomplished, nationally-recognized gastroenterologist who has dedicated his over 50-year career to the well-being of his patients and the advancement of gastroenterology. Dr. Lefton had a distinguished career and was in constant demand for his services.

28. Dr. Lefton founded and developed a medical practice, Gastrointestinal Specialists, Inc. ("GSI"), into a leading practice in his field.

29. In late 2021, USDH purchased GSI.

30. Dr. Lefton became employed by USDH on or about October 12, 2021 when he entered into a five-year employment contract with USDH that became effective on April 1, 2022. *See* **Exhibit A**.

31. In connection with the purchase of GSI, USDH conducted thorough due diligence on Dr. Lefton and did not identify any issues that precluded it from moving forward with the acquisition.

32. After the acquisition, Dr. Lefton performed his employment duties ably for USDH. At no point did USDH discipline him or otherwise inform him at any time that he had engaged in any improper behavior or mistreatment of staff. At no point did Dr. Lefton engage in any improper behavior or mistreatment of staff.

33. In spring of 2022, Dr. Lefton contracted pneumonia and was out of work for a period of time to treat and recover from the pneumonia (including a period for which he was hospitalized). When Dr. Lefton was ready to return to his practice, he did so, as there was no reason medically or otherwise for him not to.

34. On June 20, 2022, Dr. Lefton reported to his office and treated his patients in the ordinary course of business. At no point during business hours did any patient or staff member express any concern regarding Dr. Lefton's performance.

35. Nonetheless, after business hours on June 20, Dr. Anthony Rosa – one of Dr. Lefton's colleagues – instructed Dr. Lefton that he was not to report to work the next day. Dr. Rosa offered no detailed explanation for this direction.

36. On the morning of June 21, Dr. Dale Whitebloom (Chief Medical Officer of USDH with supervisory authority over Dr. Lefton) followed this conversation with an email stating "[a]s a reminder, all of your patients have been cancelled for the week. You are not to report to any RGAL locations nor are you to contact any RGAL employees. Should you have any questions, please contact us directly." Reluctantly, Dr. Lefton complied with this directive. Dr. Whitebloom's

email said nothing of a "direct threat" or otherwise provided any detail for the basis to strip Dr. Lefton of his patient care responsibilities.

37. Before the start of the following workweek, Dr. Lefton checked the scheduling software which indicated that he was scheduled to see patients.

38. On June 27, 2022, Dr. Lefton returned to the office to perform his job only to be subsequently confronted by Amanda Beeson, a Human Resources employee. Ms. Beeson directed Dr. Lefton to leave work, purportedly because of some generalized concern that he posed a threat to patients, although Ms. Beeson provided no detail to substantiate this representation. Ms. Beeson unprofessionally confronted Dr. Lefton in front of USDH staff, in a way that was intentionally humiliating and painful to Dr. Lefton.

39. Dr. Lefton decided to proactively address his assumption that USDH had unwarranted concerns about the impact the pneumonia had on his ability to perform his job duties.

40. Dr. Lefton arranged for a telehealth appointment with Dr. Rakesh Gulati – Dr. Lefton's treating physician – so that Dr. Gulati could examine Dr. Lefton and assess whether there would be any restriction on his ability to return to work. Dr. Gulati did not assess any medical reason why Dr. Lefton should be restricted from performing his job duties, provided Dr. Lefton with a letter to that effect, which Dr. Lefton in turn provided to Dr. Whitebloom and Jerry Tillinger (USDH's CEO).

41. Without justification, USDH denied Dr. Lefton's efforts to return to work and provide patient care. On June 27, after business hours, Dr. Whitebloom and Mr. Tilinger communicated that "based on information we received from staff, we believe that you pose a direct threat to the safety of your patients. More specifically, based on concerns that were raised, we

believe that if you continue to see patients, there is a significant risk that you could substantially harm the health and safety of our patients."

42. They went on to write that medical documentation from Dr. Lefton's treating physician was insufficient for USDH. Instead, Dr. Lefton would be required to be seen by a program of USDH's choosing.

43. The email concluded, stating "[f]inally, our staff is focused on provision of patient care. Until you have been cleared to return to the office, you should refrain from contacting or interrogating our staff regarding your situation…"

44. There was no legitimate reason to preclude Dr. Lefton from communicating with staff or handling his administrative duties, even if USDH genuinely believed Dr. Lefton posed a "direct threat" (which he did not).

45. Further, even if USDH had a good-faith belief that Dr. Lefton posed a medical "direct threat," there was no legitimate, nondiscriminatory reason to completely cut him off from administrative responsibilities and communications with the staff. Rather, this communication demonstrates the pretext in the proffered reason for this effective suspension of Dr. Lefton.

46. The two practices which USDH insisted examine Dr. Lefton regarding his alleged "direct threat" had multi-month waiting lists, effectively suspending Dr. Lefton for an indefinite period.

47. USDH was well aware of the wait time for examination. Specifically, Dr. Whitebloom directly contacted one of the provided options on June 23 (before Dr. Lefton was told he was a "direct threat") and was informed that it would likely take months for Dr. Lefton to get an appointment.

48. On July 7, 2022, former counsel for Dr. Lefton – on Dr. Lefton's behalf – wrote Dr. Whitebloom and Mr. Tillinger to complain about the treatment of Dr. Lefton on account of his age and disability.

49. On July 22, 2022, counsel for USDH responded with generalized and anonymous allegations about Dr. Lefton's alleged "direct threat."

50. Also around this time frame, Dr. Lefton confirmed with USDH that he was seeking to schedule appointments with the two practices identified by USDH, but that there was a considerable waiting list of several months. USDH refused to provide alternative practices, reconsider the medical documentation of Dr. Lefton's treating physician, or otherwise work with Dr. Lefton to address any good faith concerns that would allow him to return to work.

51. USDH's refusal to work with Dr. Lefton to create a reasonable path to allow him to return to work demonstrates the pretextual nature of its "direct threat" concerns. Rather, this was an effort by USDH to discriminate against Dr. Lefton and to drive him out of the practice that he founded and loved.

52. Additionally, at this time, USDH cut Dr. Lefton off from accessing USDH's electronic systems (including email) or other administrative communications. Dr. Lefton was not made aware of meetings where USDH business was discussed that as an employee and partner he had a right to attend.

53. For example, without consultation, USDH's Physician Committee (on which he served) made the decision not to continue care of patients with general medicine issues—a significant component of Dr. Lefton's medical practice. Dr. Lefton was also not informed of a Board meeting.

54. Elyse Carullo, USDH's Administrator, refused to provide Dr. Lefton with his mail that was being sent to his USDH office, including mail related to his medical certifications (Dr. Lefton had to independently arrange for his certification). These actions had no legitimate connection to the pretextual "direct threat" concern and further reflect USDH's desire to have Dr. Lefton exit employment.

55. Dr. Lefton, however, was unwilling to do so, and in late-July reconfirmed his commitment to USDH, that he was patiently waiting to move up the waiting list at the medical practices requires by USDH, and that he remained willing to discuss alternative steps that would satisfy any legitimate concerns of USDH and permit him to return to work.

56. Dr. Lefton also reiterated his complaint that USDH was discriminating against him because of his age and perceived disability, and now retaliating against him because he had complained about this discrimination.

57. On August 8, 2022, in retaliation for Dr. Lefton's complaints and as continuation of the discriminatory conduct, USDH terminated Dr. Lefton's employment.

58. In the termination letter, sent by Dr. Whitebloom, USDH claimed that the basis for termination was "repeated unprofessional behavior, including but not limited to, disruptive and harassing conduct towards office staff. This behavior has been addressed with you multiple times both in-writing, and in-person; however, you have not corrected the behavior."

59. This was a patently false, pretextual explanation for the termination. USDH had not communicated with Dr. Lefton regarding his alleged behavior either in writing or in-person.

60. Moreover, Dr. Lefton had been out of the office for months at the time of his termination, first because of his illness and afterward because of USDH's fabricated "direct threat" claim.

61. At no point (to this day) had USDH management or Human Resources interviewed or even sought to interview Dr. Lefton with respect to any allegations. Instead, recognizing that its fabricated "direct threat" basis would not be effective in driving Dr. Lefton from employment, USDH concocted a separate basis in further discrimination and in retaliation.

62. To Dr. Lefton's knowledge, information, and belief, USDH replaced Dr. Lefton with substantially younger, non-disabled employees or disseminated Dr. Lefton's job duties to substantially younger, non-disabled employees.

63. Dr. Lefton's age (78) was a determinative factor in connection with USDH's discriminatory treatment of him, including suspending and ultimately terminating his employment.

64. Dr. Lefton's disability, including his record of disability and USDH's regarding him as disabled, was a motivating or determinative factor in connection with USDH's discriminatory treatment of him, including suspending and ultimately terminating his employment.

65. Dr. Lefton's opposition to age and disability discrimination was a motivating or determinative factor in USDH's retaliatory treatment of him, including continuing his suspension and terminating his employment.

**B. USDH's Unlawful Termination of Dr. Lefton's Employment Constituted a Material Breach of His Contract.**

66. Dr. Lefton entered into a Physician-Partner Employment Agreement with USDH on October 12, 2021 ("Employment Agreement"). *See* **Exhibit A**.

67. The Employment Agreement became effective on April 1, 2022. *See id.*, §12.20.

68. The Employment Agreement called for a five-year term of employment for Dr. Lefton, as stated in Section 6.1:

> 6.1 Term. The term of Physician's employment with Employer in accordance with the terms and conditions of this Agreement shall begin on the Effective Date and continue for a period of five (5) years, and shall automatically renew for successive

> additional one (1) year periods thereafter unless Physician's employment with Employer is sooner terminated in accordance with the terms and conditions hereof. The period during which Physician is employed by Employer hereunder is referred to herein as the "Term."

*Id.*, §6.1.

69. The Employment Agreement contains several termination provisions, including "Termination With Cause" provisions found at Section 6.4. *Id.*, §6.4.

70. As relevant here, Section 6.4.11 of the Employment Agreement justifies a "With Cause" termination upon occurrence of the following event:

> 6.4.11 Physician's substantial or repeated unprofessional behavior, which continues after written notice thereof to Physician; unprofessional behavior includes without limitation, insubordination; disruptive conduct; disrespect of any office or facility staff or nursing or hospital staff, or any patients; repeated tardiness; failure to come to work or adhere to the published schedule; verbal or physical altercations; harassment or discrimination.

*Id.*, §6.4.11.

71. As noted, on August 8, 2022, USDH notified Dr. Lefton by letter that his employment was terminated. USDH cited Section 6.4.11 of the Employment Agreement as its contractual basis for the termination, asserting: "the Practice has determined you have engaged in repeated unprofessional behavior, including but not limited to, disruptive and harassing conduct towards staff. This behavior has been addressed with you multiple times both in-writing, and in-person; however, you have not corrected the behavior."

72. USDH's statements regarding the basis for Dr. Lefton's termination are false and a pretext for unlawful age discrimination and/or disability discrimination and/or retaliation.

73. Dr. Lefton did not engage in conduct violating Section 6.4.11 of the Employment Agreement.

74. USDH had no reasonable basis to terminate Dr. Lefton's employment under Section 6.4.11 of the Employment Agreement.

75. USDH's baseless termination of Dr. Lefton's employment under Section 6.4.11 constituted a material breach of the Employment Agreement.

76. As a result of USDH's material breach, Dr. Lefton has suffered damages, including, without limitation, lost income and the lost monetary value of employee benefits owed for the rest of Employment Agreement's term.

77. As a result of USDH's material breach, Dr. Lefton has also suffered consequential damages.

78. Dr. Lefton is entitled to all damages recoverable and permissible by law for the USDH's breach of its contractual obligations and duties owed to him under the Employment Agreement.

79. USDH has also violated the WPCL because Dr. Lefton did not receive his established contracted compensation due to him under the Employment Agreement.

**COUNT I – ADA, 42 U.S.C. §12101, *et seq.***
**(Disparate Treatment)**
**Plaintiff v. Defendants**

80. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

81. USDH has violated the ADA by committing the foregoing acts of discrimination against Plaintiff, including suspending and terminating his employment.

82. As a direct and proximate result of USDH's violation of the ADA, Dr. Lefton has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Dr.

Lefton is now suffering and will continue to suffer irreparable injury and monetary damages as a result of USDH's discriminatory acts unless this Court grants the relief requested herein.

83. USDH acted intentionally, and with malice and/or reckless indifference to Dr. Lefton's rights, and its conduct warrants imposing punitive damages.

**<u>COUNT II – ADA, 42 U.S.C. §12101, *et seq.*</u>**
**(Retaliation)**
**Plaintiff v. Defendants**

84. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

85. USDH has violated the ADA by committing the foregoing acts of retaliation against Dr. Lefton, including continuing his suspension and terminating his employment.

86. As a direct and proximate result of USDH's violation of the ADA, Dr. Lefton has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Dr. Lefton is now suffering and will continue to suffer irreparable injury and monetary damages as a result of USDH's retaliatory acts unless this Court grants the relief requested herein.

87. USDH acted intentionally, and with malice and/or reckless indifference to Dr. Lefton's rights, and its conduct warrants imposing punitive damages.

**<u>COUNT III – ADEA, 29 U.S.C. § 621, *et seq.*</u>**
**(Disparate Treatment)**
**Plaintiff v. Defendants**

88. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

89. USDH has violated the ADEA by committing the foregoing acts of age discrimination against Dr. Lefton, including suspending and terminating his employment.

90. As a direct and proximate result of USDH's violation of the ADEA, Dr. Lefton has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Dr. Lefton is now suffering and will continue to suffer irreparable injury and monetary damages as a result of USDH's discriminatory acts unless this Court grants the relief requested herein.

91. USDH's violations of the ADEA were willful and warrant imposing liquidated damages.

**COUNT IV – ADEA, 29 U.S.C. § 621, *et seq.***
**(Retaliation)**
**Plaintiff v. Defendants**

92. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

93. USDH has violated the ADEA by committing the foregoing acts of retaliation against Dr. Lefton, including continuing his suspension and terminating his employment.

94. As a direct and proximate result of USDH's violation of the ADEA, Dr. Lefton has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Dr. Lefton is now suffering and will continue to suffer irreparable injury and monetary damages as a result of USDH's retaliatory acts unless this Court grants the relief requested herein.

95. USDH's violations of the ADEA were willful and warrant imposing liquidated damages.

**COUNT V – PHRA, 43 P.S. §951, *et seq.***
**(Disparate Treatment)**
**Plaintiff v. Defendants**

96. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

97. USDH has violated the PHRA by committing the foregoing acts of disability and age discrimination against Dr. Lefton, including suspending and terminating his employment.

98. As a direct and proximate result of USDH's violation of the PHRA, Dr. Lefton has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Dr. Lefton is now suffering and will continue to suffer irreparable injury and monetary damages as a result of USDH's discriminatory acts unless this Court grants the relief requested herein.

**COUNT VI – PHRA, 43 P.S. §951, *et seq.***
**(Retaliation)**
**Plaintiff v. Defendants**

99. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

100. USDH has violated the PHRA by committing the foregoing acts of retaliation against Dr. Lefton, including continuing his suspension and terminating his employment.

101. As a direct and proximate result of USDH's violation of the PHRA, Dr. Lefton has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs. Dr. Lefton is now suffering and will continue to suffer irreparable injury and monetary damages as a result of USDH's retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT VII – Breach of Contract**
**Plaintiff v. Defendants**

102. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

103. The Employment Agreement (Exhibit A) constitutes a valid and enforceable contract between Dr. Lefton and USDH and is supported by adequate legal consideration.

104. USDH had no reasonable basis to terminate Dr. Lefton's employment under Section 6.4.11 of the Employment Agreement.

105. USDH's baseless termination of Dr. Lefton's employment under Section 6.4.11 constituted a material breach of the Employment Agreement.

106. Dr. Lefton is entitled to all compensation and the monetary value of lost benefits that he would have received had USDH not materially breached Employment Agreement.

107. Dr. Lefton is now suffering and will continue to suffer irreparable injury and monetary and consequential damages as a result of USDH's material breach of the Employment Agreement until this Court grants the relief requested herein.

**COUNT VIII – WPCL, 43 P.S. §206.1, *et seq.***
**Plaintiff v. Defendants**

108. Dr. Lefton incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

109. The Employment Agreement established contractual employment with between USDH and Dr. Lefton.

110. Both Dr. Lefton and USDH accepted the terms of the Employment Agreement via its joint execution by the parties.

111. USDH violated the WPCL by refusing to pay Dr. Lefton the contractually owed amounts.

112. Because there is no good faith dispute that the sums owed to Dr. Lefton are due and owing, under Section 260.10 of the WPCL, Dr. Lefton is entitled to recover liquidated damages against USDH in an amount equal to twenty-five percent (25%) of the sums owed to him, or $500, whichever is greater.

113. Under Section 260.9(a)(f) of the WPCL, if Dr. Lefton is successful in obtaining a judgment against USDH, this Court is required to award Dr. Lefton his costs and reasonable attorneys' fees incurred in litigating this action.

**RELIEF**

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant him the following relief by:

(a) declaring the acts and practices complained of herein to be in violation of the ADA;

(b) declaring the acts and practices complained of herein to be in violation of ADEA;

(c) declaring the acts and practices complained of herein to be in violation of the PHRA;

(d) declaring the acts and practices complained of herein to be in violation of Pennsylvania common law;

(e) declaring the acts and practices complained of herein to be in violation of the WPCL;

(f) enjoining and permanently restraining the violations alleged herein;

(g) entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(h) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(i) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, reputational damages, and loss of life's pleasures,

which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(j) awarding punitive damages to Plaintiff;

(k) awarding liquidated damages to Plaintiff under the ADEA and WPCL;

(l) awarding consequential damages to Plaintiff;

(m) awarding damages in the owed amounts to Plaintiff under the Employment Agreement, including interest, liquidated damages, and post-judgment interest at the legal rate;

(n) awarding Plaintiff such other damages as are appropriate under the ADA, ADEA, PHRA, WPCL, and Pennsylvania common law;

(o) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(p) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**SIDNEY L. GOLD & ASSOC., P.C.**

By: /s/ Brian C. Farrell
Sidney L. Gold, Esquire
Brian C. Farrell, Esquire
PA ID No. 319145
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
bfarrell@discrimlaw.net
Attorney for Plaintiff, Harvey Lefton, M.D.

Date: August 31, 2023